# EXHIBIT 1



New York Consolidated, Amended and Restated Note – SBL
(Revised 05-3-2016)

| | |
|---|---|
| Freddie Mac Loan Number: | 499509277 |
| Property Name: | 1056, 1060 & 1064 Findlay |

| | |
|---|---|
| **Borrower:** | **FINDLAY ESTATES LLC**, a New York limited liability company |
| **Lender:** | **GREYSTONE SERVICING CORPORATION, INC.**, a Georgia corporation |
| **Effective Date:** | **January 14, 2019** |

THIS NEW YORK CONSOLIDATED, AMENDED AND RESTATED NOTE ("**Note**") is entered into by Borrower (jointly and severally if more than one) for the benefit of Lender and is effective as of the Effective Date.

### PRELIMINARY STATEMENTS

A.  This Note consolidates the promissory notes described in Exhibit A to this Note (together the "**Existing Notes**"), without impairing the debt evidenced by the Existing Notes. This Note does not create any new or additional indebtedness but evidences the outstanding indebtedness established by the Existing Notes so that this Note evidences a single consolidated debt in the principal amount of **$6,335,000.00**.

B.  This Note amends and restates in their entirety the terms, obligations, agreements, covenants and conditions set forth in the Existing Notes and all other agreements that previously consolidated, modified and extended the Existing Notes so that the terms of this Note supersede the terms, obligations, agreements, covenants and conditions of the Existing Notes.

NOW, THEREFORE, in consideration of these promises, the mutual covenants contained in this Note and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree that the Existing Notes are consolidated, amended and restated in this Note in their entirety as follows:

### [REMAINDER OF PAGE INTENTIONALLY BLANK]



Note Hybrid ARM – SBL (10-19-2018)

Freddie Mac Loan Number: 499509277
Property Name: 1056, 1060 & 1064 Findlay

**Borrower:** **FINDLAY ESTATES LLC**, a New York limited liability company
**Lender:** **GREYSTONE SERVICING CORPORATION, INC.**, a Georgia corporation
**Effective Date:** **January 14, 2019**

FOR VALUE RECEIVED, Borrower (jointly and severally if more than one), promises to pay to the order of Lender the Principal Amount shown below, plus interest, according to the terms provided in this Note ("**Note**").

1. **Key Terms.**

| | |
|---|---|
| **Principal Amount**: US **$6,335,000.00** | **Loan Term**: **240** months |
| **Amortization Period**: **360** months | **Maturity Date**: **February 1, 2039** |
| **First Payment Date**: **March 1, 2019** | **Prepayment Charge**: See Schedule 1 |

| | |
|---|---|
| **Fixed Rate Period: 60** months | |
| **Fixed Annual Interest Rate**: **4.940%**<br><br>*(applies during the Fixed Rate Period only)* | **Fixed Monthly Principal and Interest Payment Amount**: **$33,775.73**<br><br>*(applies during the Fixed Rate Period only)* |

| | |
|---|---|
| **Floating Rate Period: 180** months | |
| **Variable Annual Interest Rate:** Current Index + Margin, subject to the limits described in Section 2(d)(iv)<br><br>**Current Index:** LIBOR Index, and after an Index Conversion Event, the Adjusted Alternate Index (*see Section 2(d)(ii)*) | **First Change Date: February 1, 2024**<br><br>**Subsequent Change Dates:** the first day of every 6th month after the First Change Date<br><br>**Index Conversion Change Date:** the date of an Index Conversion Event for which Borrower receives Notice from Lender, as described in Section 2(d) |
| **Margin: 3.25%** | |

Check here (☐) and complete the following for full or partial term interest-only loans:

| |
|---|
| **Interest-Only Period:** ___ months |
| **Per Diem Interest-Only Payment Amount:** $_____<br>*(expressed to the fifth decimal place)* |
| **First Principal and Interest Payment Date:** _____ |

| |
|---|
| **Lender Address for Payment:**<br>Greystone Servicing Corporation, Inc.<br>P. O. Box 281163<br>Atlanta, Georgia  30384-1163 |

| |
|---|
| **Property Jurisdiction (Location of the Mortgaged Property):**<br>**Borough and County of the Bronx, City and State of New York** |

2. **Interest.**

   (a) **Interest Rate.**

   (i) **During Fixed Rate Period.** Prior to the First Change Date, interest will accrue on the outstanding principal balance of this Note at the Fixed Annual Interest Rate, subject to the provisions of Section 5(b) of this Note related to the Default Annual Interest Rate.

   (ii) **During Floating Rate Period.** On and after the First Change Date, interest will accrue on the outstanding principal balance of this Note at the Variable Annual Interest Rate, subject to the limits on Variable Annual Interest Rate Changes described in Section 2(d)(iv) of this Note and further subject to the provisions of Section 5(b) of this Note related to the Default Annual Interest Rate.

   (b) **Interest Due for Partial Month.** Unless Lender disburses the Principal Amount to Borrower on the first day of a month, Borrower must pay interest for that partial first month.

   (c) **Interest Calculation.**

   (i) Lender will determine and allocate interest using an actual/360 interest schedule (interest is payable for the actual number of days in each month, and each month's interest is calculated by multiplying the unpaid Principal Amount as of the 1st day of the month for which interest is being calculated by the applicable interest rate, dividing the product by 360, and multiplying the quotient by the number of days in the month for which interest is being calculated). The amount of each payment attributable to principal and the amount attributable to interest will be based on an actual/360 interest schedule so it will vary based upon the number of days in the month for which such payment is paid.

   (ii) For convenience, to calculate the actual monthly principal and interest payment amounts, Lender will use a 30/360 interest calculation payment schedule (each year is treated as consisting of twelve 30-day months).

   (iii) If Lender receives any monthly payment before its Payment Date, Lender will be deemed to have received the payment on its Payment Date for the purpose of calculating interest due.

   (iv) Any accrued interest remaining past due for 30 days or more may be added to and become part of the unpaid Principal Amount and any reference to "**accrued interest**" will refer to accrued interest which has not yet become part of the unpaid Principal Amount. Any amount added to the Principal Amount pursuant to the Loan Documents will bear interest at the applicable rate or rates specified in this Note and will be payable with such interest upon demand by Lender and, absent such demand, as provided in this Note for the payment of principal and interest.

   (d) **Variable Annual Interest Rate.**

   (i) **Change Dates.** The Variable Annual Interest Rate may change on each of the following:

   (A) First Change Date
   (B) Subsequent Change Dates
   (C) if Borrower receives Notice from Lender that an Index Conversion Event occurs, on the applicable Index Conversion Change Date specified in such Notice

Each of the First Change Date, the Subsequent Change Dates, and any Index Conversion Change Dates is a "**Change Date**." The new Variable Annual Interest Rate will become effective on each Change Date.

(ii) **Index and Index Conversion.**

(A) The "**Index**" is defined as follows:

(1) From the Effective Date until Lender gives Borrower Notice of an Index Conversion Event, the Index is the LIBOR Index.

(2) Following Lender's Notice to Borrower of an Index Conversion Event, the Index is the Adjusted Alternate Index.

"**Index Conversion Event**" is defined on Schedule 2 of this Note. An Index Conversion Event may occur multiple times during the term of the Loan.

"**LIBOR Index**" means the Intercontinental Exchange's (ICE) rate for the 6 month London Interbank Offered Rate (LIBOR) for United States Dollar deposits, as such index is displayed on the applicable LIBOR Index Page.

"**LIBOR Index Page**" is defined on Schedule 2 of this Note.

"**Adjusted Alternate Index**" means the sum of the Alternate Index and the Adjustment Factor. There may be successive Adjusted Alternate Indexes during the term of the Loan.

"**Alternate Index**" means an alternate, substitute, or successor index to the then-current Index selected by Lender, whether the LIBOR Index or a prior Alternate Index.

"**Alternate Index Page**" means the applicable page for the Alternate Index on the service selected by Lender that electronically transmits or displays rates for the Alternate Index.

"**Adjustment Factor**" means a factor calculated by Lender upon an Index Conversion Event that Lender determines will, when added to the Alternate Index, cause the Alternate Index to be comparable to the Index being replaced as a result of the Index Conversion Event. The Adjustment Factor may be positive, negative, or zero.

(B) When identifying the Alternate Index and calculating the Adjustment Factor, Lender will take into consideration any alternate, substitute, or successor index to the then-current Index that has been selected, endorsed, or recommended by the commercial real estate finance industry or the International Swaps and Derivatives Association (ISDA) and the methods generally accepted by the commercial real estate finance industry or ISDA for calculating an adjustment factor.

(C) Lender's designation of an Alternate Index and Alternate Index Page, and its calculation of an Adjustment Factor will be conclusive. If Freddie Mac is the Lender, such designation or calculation will be in Lender's sole discretion. If Lender is not Freddie Mac, such designation or calculation will be made at, and in accordance with, the written direction of Freddie Mac, which will be given in Freddie Mac's sole discretion.

      (D)    The applicable Index most recently preceding each Change Date, whether the LIBOR Index or the Adjusted Alternate Index, is the "**Current Index**." If at any time the Current Index is less than zero, the Current Index will be deemed to be zero for all purposes of this Note.

      (E)    On each Change Date, the Variable Annual Interest Rate will not be more than 1% higher or 1% lower than the interest rate applicable immediately prior to the Change Date, subject to the limits in Sections 2(d)(iv)(A) and (B).

  (iii)    **Calculation of Variable Annual Interest Rate.** Before each Change Date, Lender will calculate the new Variable Annual Interest Rate by adding the Margin to the Current Index, such sum to be calculated to the 5th decimal place without rounding. Subject to the limits stated in Section 2(d)(iv) below, this sum will be the new Variable Annual Interest Rate until the next Change Date.

  (iv)    **Limits on Variable Annual Interest Rate Changes**.

      (A)    The Variable Annual Interest Rate will never be less than the Fixed Annual Interest Rate.

      (B)    The Variable Annual Interest Rate will never be greater than the Fixed Annual Interest Rate plus 5%.

      (C)    On each Change Date, the Variable Annual Interest Rate will not be more than 1% higher or 1% lower than the interest rate applicable immediately prior to the Change Date, subject to the limits in Sections 2(d)(iv)(A) and (B) above.

3. **Payments.**

   (a) **Time of Payments.** Borrower will make a payment every month on the first day of each month (each, a "**Payment Date**") beginning on the First Payment Date. Borrower will make these payments every month until Borrower has paid the entire Principal Amount, accrued interest on the Principal Amount, and any other charges that Borrower may owe Lender, whether described in this Note or in any other Loan Document. Each payment will be applied as of its scheduled Payment Date, and, if the payment consists of both principal and interest, it will be applied to accrued interest before principal. If, on the Maturity Date, Borrower still owes amounts under this Note or any other Loan Document, Borrower will pay those amounts in full on the Maturity Date.

   (b) **Payments during the Fixed Rate Period**

     (i)    **Payments if there is no Interest-Only Period.** If Section 1 does not specify an Interest-Only Period, then beginning on the First Payment Date, each monthly payment until and including the First Change Date will be equal to the Fixed Monthly Principal and Interest Payment Amount.

     (ii)    **Payments if there is an Interest-Only Period.** If Section 1 specifies an Interest-Only Period, then beginning on the First Payment Date, each monthly payment during the Interest-Only Period will only be for the amount of interest due on the unpaid Principal Amount. Each monthly payment during the Interest-Only Period will vary, and will equal the Per Diem Interest-Only Payment Amount multiplied by the number of days in the month prior to the Payment Date. Beginning on the First Principal and Interest Payment Date and continuing to and including the First Change Date, each monthly payment will be equal to the Fixed Monthly Principal and Interest Payment Amount.

(c) **Payments during the Variable Rate Period.**

    (i) **Calculation of Payments.** When Lender calculates the Variable Annual Interest Rate for each Change Date under Section 2(d)(iii), Lender will also determine the amount of the new monthly payment of principal and interest payable on a Payment Date so as to equal the monthly payment amount which would be payable on the Payment Date as if the Principal Amount of this Note as of the Change Date immediately preceding the Payment Date were to be fully amortized, together with interest at the new interest rate, in equal consecutive monthly payments paid on each Payment Date over the Remaining Amortization Period.  The "**Remaining Amortization Period**" means the original Amortization Period specified in Section 1 minus the number of scheduled monthly payments of principal and interest that have elapsed since the Effective Date of this Note.

    (ii) **Payments After a Change Date.** Borrower will pay the amount of the new monthly payment as described in Section 3(c)(i) beginning on the first Payment Date after the applicable Change Date until the amount of the monthly payment changes again.

    (iii) **Notice of Interest Rate and Payment Changes.**  Lender will provide Borrower with Notice of any changes to the Variable Annual Interest Rate pursuant to Section 2(d) and to the amount of the monthly payment due under this Note as a result of the application of the Variable Annual Interest Rate on a Change Date.  However, if Lender has not provided Borrower with prior Notice of the monthly payment due on any Payment Date, then on that Payment Date, Borrower will pay an amount equal to the monthly payment for which Borrower last received Notice from Lender, or if Borrower has received no Notice of a payment change from Lender, then Borrower will pay an amount equal to the Fixed Monthly Principal and Interest Amount. If Lender at any time determines that Borrower has paid one or more monthly payments in an incorrect amount because of the preceding sentence, or because Lender has miscalculated the Variable Annual Interest Rate or has otherwise miscalculated the amount of any monthly payment, then Lender will give Notice to Borrower of such determination.  If such determination discloses that Borrower has paid less than the full amount that should have been due, then within 30 calendar days after receipt of the Notice from Lender, Borrower will pay Lender the full amount of the deficiency.  If such determination discloses that Borrower has paid more than the full amount that should have been due, then the amount of the overpayment will be credited to the next payment(s) of principal and interest due under this Note (or, if an Event of Default has occurred and is continuing, such overpayment will be credited against any amount Borrower owes Lender).

(d) **Manner and Place of Payment.** Borrower will authorize Lender to make arrangements so that all payments under this Note are transferred by automated clearinghouse transfer initiated by Lender directly from an account at a U.S. bank designated by Borrower to an account designated by Lender.

4. **Borrower's Right to Prepay.**

(a) **Prepayment**. If Lender receives any principal payment or other amounts before the Maturity Date other than monthly payments specified in Sections 1 and 3, it will be considered a prepayment ("**Prepayment**").  Borrower may not make a partial Prepayment unless expressly permitted by the Loan Documents.  If Lender accepts and applies any partial Prepayment, Lender will not change the Payment Dates nor will it change the Monthly Principal and Interest Payment Amount. Lender may apply any Prepayment to any amounts due under this Note as Lender determines, including to any accrued and unpaid interest on the Principal Amount and the Prepayment Charge specified on Schedule 1, if applicable, before applying a Prepayment to reduce the Principal Amount.

(b) **Prepayment Charge.** Borrower must pay the Prepayment Charge specified on Schedule 1 in connection with any Prepayment under this Note, whether voluntary or involuntary or resulting from a default by Borrower, except any Prepayment (i) occurring as a result of the application of any Insurance proceeds or Condemnation award, (ii) required under the terms of the Loan Agreement in connection with a Condemnation proceeding, or (iii) made during the Window Period (as defined on Schedule 1).

(c) **Designation of Payment Date for Prepayment.** If Borrower gives at least 30 days' prior Notice to Lender, then Borrower may make a full Prepayment on a Payment Date. If the Payment Date is not a Business Day, then the "Payment Date" for this full Prepayment will mean the Business Day immediately before the Payment Date and the calculation of any required Prepayment Charge will be made as if the Prepayment had actually been made on the scheduled Payment Date. Borrower must pay to Lender (i) all principal, (ii) the Prepayment charge, (iii) all accrued and unpaid interest and (iv) all other sums due to Lender at the time of such Prepayment.

(d) **Designation of Day other than a Payment Date for Prepayment.** If Borrower gives at least 30 days' prior Notice to Lender, then Borrower may make a full Prepayment on a Business Day that is not a Payment Date. However, Lender will only accept this Prepayment if Borrower pays to Lender all amounts due under Section 4(c), including all interest that would have been due if the Prepayment had actually been made on the Payment Date immediately after the designated Business Day.

(e) **Prepayment Charge NOT a Penalty.** Borrower recognizes that any Prepayment, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any Prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower agrees that the formula for calculating the Prepayment Charge in this Note represents a reasonable estimate of the damages that Lender will incur because of a Prepayment. Borrower further acknowledges that the Prepayment Charge set forth in this Note is a material part of the consideration for the Loan, and that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the Prepayment Charge.

5. **Borrower's Failure to Pay as Required; Defaults.**

    (a) **Late Charge for Overdue Payment.** If Lender has not received the full amount of any monthly payment by the 10th day of any month or any amount due under any Loan Document within 9 days after it is due (unless applicable law requires a longer period of time before a late charge may be imposed), then Borrower must pay a late charge to Lender ("**Late Charge**"). The amount of the Late Charge will be 5% of any overdue payment or amount (unless applicable law requires a lower amount to be charged). Borrower will pay this Late Charge promptly but only once with respect to each late payment. If the Loan is not fully amortizing, no Late Charge will be due on the final payment of the unpaid Principal Amount owed on the Maturity Date.

    (b) **Interest Rate after Default.** If Lender has not received the full amount of any monthly payment for 30 days or more after the Payment Date or any other Event of Default has occurred and is continuing, then the interest rate under this Note will increase to the Fixed Annual Interest Rate or the Variable Annual Interest Rate, as applicable, plus 4% ("**Default Annual Interest Rate**") beginning on that Payment Date or the date any other Event of Default commences. If Borrower has not paid the entire Principal Amount by the Maturity Date, the Default Annual Interest Rate will continue until and including the date on which the entire unpaid portion of the Principal Amount is paid in full.

    (c) **Default.** If Borrower does not pay the full amount of each payment on the date it is due, or if any other Event of Default occurs and is continuing, Borrower will be in default.

(d) **Lender's Damages.** Borrower acknowledges that its failure to make timely payments will increase Lender's expenses and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the Late Charge and the Default Annual Interest Rate both represent fair and reasonable estimates of Lender's additional expenses.

(e) **Acceleration.** If Borrower continues to be in default, the entire unpaid Principal Amount, any accrued interest, any Prepayment Charge, and all other amounts payable under this Note and any other Loan Document will immediately become due and payable, at the option of Lender, without any prior Notice to Borrower (unless applicable law requires Notice). Lender will calculate any Prepayment Charge as if Prepayment occurred on the date of acceleration. If Prepayment occurs thereafter, Lender will recalculate the Prepayment Charge as of the actual Prepayment date.

6. **Notices and Written Modifications.** All Notices required or permitted to be given under this Note must be given in accordance with Section 10.03 of the Loan Agreement. Any modification or amendment to this Note will not be effective unless it is in writing and signed by Borrower and Lender.

7. **Personal Liability.** The provisions of Article III of the Loan Agreement are incorporated by reference into this Note to the same extent and with the same force as if fully set forth in this Note.

8. **Security.** The Indebtedness is secured by, among other things, the Security Instrument and reference is made to the Security Instrument and the Loan Agreement for other rights with respect to collateral for the Indebtedness.

9. **Payment of Lender's Costs and Expenses.** Lender will have the right to be paid back by Borrower for Lender's entire costs and expenses, including Attorneys' Fees and Costs, resulting from any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those costs and expenses incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay) or judicial or nonjudicial foreclosure proceeding. Borrower agrees that, in connection with each request by Borrower under this Note or any other Loan Document, Borrower must pay all Attorneys' Fees and Costs and expenses incurred by Lender, regardless of whether the matter is approved, denied or withdrawn.

10. **Waivers.**

    (a) **Presentment and Notice of Dishonor.** Borrower and all endorsers and Guarantors and all other third party obligors waive presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness.

    (b) **Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note or any other Loan Document, or otherwise afforded by applicable law, will not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the applicable Payment Date, or in an amount which is less than the required payment, will not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Application by Lender of any security for Borrower's obligations under this Note will not constitute an election of remedies by Lender so as to preclude the exercise of any other right or remedy available to Lender.

    (c) **Waiver Of Trial By Jury.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER EACH KNOWINGLY AND VOLUNTARILY, WITH THE BENEFIT OF, OR THE OPPORTUNITY TO CONSULT WITH, COMPETENT LEGAL COUNSEL, (i) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR

> THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY, AND (ii) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.

11. **Commercial Purpose.** Borrower represents that Borrower is incurring the Indebtedness solely for the purpose of carrying on a business or commercial enterprise, and not for consumer, personal, family, household or agricultural purposes.

12. **Counting of Days.** Any reference in this Note to a period of "**days**" means calendar days, not Business Days, except where otherwise specifically provided.

13. **Captions.** The captions or headings of the Sections of this Note are for convenience only and will be disregarded in construing this Note.

14. **Governing Law.** This Note will be governed by the laws of the Property Jurisdiction.

15. **Defined Terms.** Capitalized terms used but not defined in this Note, including in the table in Section 1 of this Note, will have the meanings given to such terms in the Loan Agreement. "**Loan Agreement**" means the Loan Agreement by and between Borrower and Lender, effective as of the Effective Date of this Note, as amended, modified or supplemented from time to time.

16. **Time of the Essence.** TIME IS OF THE ESSENCE as to each and every provision of this Note requiring payment.

17. **Successors and Assigns.** This Note will bind the respective successors and assigns of Borrower and Lender, and the rights granted by this Note will inure to Lender's successors and assigns. Borrower understands that Lender may transfer this Note. Anyone who takes this Note by transfer and who is entitled to receive payments under this Note will also be called "**Lender**."

18. **Loan Charges.** Neither this Note nor any of the other Loan Documents will be construed to create a contract requiring payment of interest at a rate greater than the maximum amount of interest allowed by applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, then: (a) any such Loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be applied to Principal. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, will be deemed to be allocated and spread ratably over the stated term of this Note. Unless otherwise required by applicable law, such allocation and spreading will be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of this Note.

19. **State-Specific Provisions.** State-specific provisions, if any, for the Property Jurisdiction identified in Section 1 are included on Schedule 3 to this Note.

20. **Community Property Provision (Non-Entity Borrower(s) Only).** If Borrower (or any Borrower, if more than one) is a married person, and the state of residence of Borrower or Borrower's spouse is a community property jurisdiction, Borrower (or each such married Borrower, if more than one) agrees that Lender may satisfy Borrower's obligations under this Note and all Loan Documents to the extent of all of Borrower's separate property and Borrower's interest in any community property.

21. **Attached Schedules, Riders and Exhibits.** The following Schedules, Riders, if any, and Exhibits, if any, are attached to, and incorporated fully into, this Note:

    |X|  Schedule 1 – Prepayment Charge

    |X|  Schedule 2 – Index Conversion Events and LIBOR Index Pages

    |X|  Schedule 3 – State-Specific Provisions by Property Jurisdiction

22. **Sealed Instrument.** Where applicable law provides, Borrower intends that this Note will be deemed to be signed and delivered as a sealed instrument.


**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURES ON FOLLOWING PAGES**

IN WITNESS WHEREOF, and in consideration of the Lender's agreement to lend Borrower the Principal amount set forth above, Borrower has signed and delivered this Note under seal or has caused this Note to be signed and delivered under seal by its duly authorized representative.

**BORROWER:**

**FINDLAY ESTATES LLC**, a New York limited liability company

By: _____
Name:    Sheindy Grunhut
Title:    Managing and Sole Member

PAY TO THE ORDER OF _____Federal Home Loan Mortgage Corp._____
WITHOUT RECOURSE

**LENDER:**

**GREYSTONE SERVICING CORPORATION, INC.**, a
Georgia corporation

By: _____[signature]_____
Name:   N. Tyler Darby
Title:   Closing Manager

{218/2254/01237568}
New York Consolidated, Amended and Restated Note
Hybrid ARM - SBL                                                                 Page S-2

## SCHEDULE 1

### Prepayment Charge

| 60 Month Fixed Rate Period + 180 Month Floating Rate Period Step-Down Prepayment Option #3 – (3%, 1%, 0%, 0%, 0%) | |
|---|---|
| The Window Period is: | The 216 consecutive calendar month period prior to the Maturity Date. |
| The Prepayment Charge is: | (i)    3.0% of the principal being prepaid if the Prepayment occurs prior to the 12th Payment Date; and <br><br> (ii)    1.0% of the principal being prepaid if the Prepayment occurs on or after the 12th Payment Date and prior to the first day of the Window Period. |

## SCHEDULE 2

### Index Conversion Events and LIBOR Index Pages

"**Index Conversion Event**" means any one of the following:

(a)  the publication of the then-current Index has been either permanently or indefinitely suspended, or

(b)  regardless of the continued existence of the then-current Index, the use of an alternate, substitute or successor index to the then-current Index in mortgages purchased and/or guaranteed by Freddie Mac is required by (i) any regulator of Freddie Mac, (ii) any governmental entity with authority to direct the actions of Freddie Mac, or (iii) applicable law, or

(c)  Lender has determined, in its sole discretion, that the then-current Index must be replaced with the Alternate Index as a result of one or more of the following event(s):

  (i)  The supervisor of the administrator of the then-current Index has announced in a public statement that (A) the publication of the then-current Index will be either permanently or indefinitely suspended, (B) there has been or will be a material change in the methodology of calculating the Index, or (C) it no longer recommends the use of the Index as an index.

  (ii)  Lender has determined that the use of an alternate, substitute or successor index to the then-current Index has become a generally acceptable market practice in the commercial real estate finance industry regardless of the continued existence of the then-current Index.

  (iii)  ISDA has announced that it will use an alternate, substitute or successor index to the then-current Index regardless of the continued existence of the then-current Index.

  (iv)  Any (A) regulator of Freddie Mac or (B) governmental entity with authority to direct the actions of Freddie Mac recommends the use of an alternate, substitute or successor index to the then-current Index in mortgages purchased and/or guaranteed by Freddie Mac regardless of the continued existence of the then-current Index.

Lender may but is not required to rely on a statement of the supervisor of the administrator of the applicable Index to make its determination that an Index Conversion Event has occurred.

"**LIBOR Index Page**" means one of the following, as determined by Lender:

(a)  Bloomberg L.P., page "BBAM", or such other page for the LIBOR Index as may replace page BBAM on that service.

(b)  The applicable page for the LIBOR Index on another service which electronically transmits or displays rates for LIBOR.

(c)  Any publication of rates for LIBOR available from ICE.

(d)  If ICE ceases to set or publish a LIBOR rate/interest settlement rate, any other publication of rates for LIBOR that Lender determines is appropriate for calculating the Variable Annual Interest Rate.

## SCHEDULE 3

### State-Specific Provisions by Property Jurisdiction

| Property Jurisdiction | State-Specific Provision(s) |
|---|---|
| New York | None |

## EXHIBIT A

## LIST OF EXISTING NOTES

A. Mortgage Note in the original principal amount of $375,000.00 made by 1056 Findlay LLC to Astoria Federal Savings and Loan Association, dated April 23, 2007;

B. Consolidated Mortgage Note in the original principal amount of $941,000.00 made by 1056 Findlay LLC to Madison National Bank, dated October 2, 2008;

C. Promissory Note in the original principal amount of $570,000.00 made by TP Finday Realty, LLC to Washington Mutual Bank, FA, dated December 19, 2002;

D. Mortgage Note in the original principal amount of $600,000.00 made by 1064 Findlay LLC to Astoria Federal Savings and Loan Association, dated February 26, 2007;

E. Mortgage Note in the original principal amount of $600,000.00 made by 1060 Findlay LLC to Astoria Federal Savings and Loan Association, dated April 23, 2007;

F. Multifamily Note in the original principal amount of $768,653.40 made by Findlay Estates LLC to Arbor Commercial Funding, LLC, dated July 28, 2011;

G. Multifamily Note in the original principal amount of $2,800,000.00 made by Findlay Estates LLC to Arbor Commercial Funding, LLC, dated July 28, 2011;

H. Mortgage Note in the original principal amount of $2,633,472.59 made by Findlay Estates LLC to Customers Bank, dated October 29, 2014;

I. Amended, Restated and Consolidated Promissory Note in the original principal amount of $5,250,000.00 made by Findlay Estates LLC to Customers Bank, dated October 29, 2014;

J. Gap Note in the original principal amount of $270,522.44 made by Findlay Estates LLC to Tamid LLC, dated March 13, 2018;

K. Amended, Consolidated and Restated Mortgage Note in the original principal amount of $5,125,000.00 made by Findlay Estates LLC to Tamid LLC, dated March 13, 2018; and

L. Gap Note Hybrid ARM – SBL in the original principal amount of $1,210,000.00 made by Findlay Estates LLC to Greystone Servicing Corporation, Inc., dated January 14, 2019.