UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOME LOAN MORTGAGE
CORPORATION,

                        Plaintiff,

             -v-

FINDLAY ESTATES, LLC, SHEINDY GRUNHUT,
COHLER FUEL OIL COMPANY, INC., and JOHN
DOES 1-50, the names of the last 50 Defendants, being
fictitious and unknown to Plaintiff, such persons or
parties being intended to designate parties with liens that
are subject and subordinate to the lien of the mortgage
being foreclosed herein and tenants, lessees, or occupants
of portions of the mortgaged premises described in the
Complaint,

                        Defendants.

20 Civ. 8884 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

      Defendants Findlay Estates, LLC ("Findlay") and Sheindy Grunhut ("Grunhut") move here under Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint of plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac"), arguing that Freddie Mac colluded with loan originator and servicer Greystone Servicing Company LLC ("Greystone") to manufacture subject matter jurisdiction. For the reasons that follow, the Court denies the motion to dismiss.

I.     **Background**[1]

      On or about January 14, 2019, Greystone originated a mortgage loan of $6,335,000 on the property located at 1056, 1060, and 1064 Findlay Avenue, Bronx, New York (the "Property")

---

[1] This account draws from the complaint, Dkt. 1 ("Compl."), the parties' submissions on the motion to dismiss, including defendants' memorandum of law in support, Dkt. 29-6 ("Mem."), Freddie Mac's opposition, Dkt. 42 ("Opp'n"), and defendants' reply, Dkt. 45 ("Reply"), and the

to borrower Findlay. Compl. ¶¶ 1, 9–10. Grunhunt is purportedly Findlay's sole member and is the loan's guarantor. *Id.* ¶¶ 3–4. On January 14, 2019, Greystone assigned all right, title, and interest in the loan to Freddie Mac, *id.* ¶ 12, but continued to service the loan until December 31, 2020, *see* Pierre Decl. ¶ 2. Greystone made the assignment to Freddie Mac in the "regular course of Freddie Mac's Multifamily Seller/Servicer program," the objective of which is to provide a "secondary market" to private lenders to "establish and enhance markets for home and multifamily Mortgages." Walsh Decl. ¶¶ 3, 10. As a part of that assignment, Greystone agreed to repurchase the loan from Freddie Mac in the event of certain defaults on the loan. *See* Pierre Decl. ¶ 5. Those defaults allegedly occurred in 2020. *Id.* Although Greystone and Freddie Mac agreed to provide Greystone with additional time to work with Findlay, on September 15, 2020, Freddie Mac informed Greystone that because the loan was 60 days delinquent, Greystone would be required to repurchase the loan on November 12, 2020. *See id.* ¶¶ 5–6; Walsh Decl. ¶ 7; *id.*, Ex. 1 (email notice from Freddie Mac to Greystone that it would have to repurchase the loan on November 12, 2020).

On October 23, 2020, Freddie Mac filed the complaint, seeking to foreclose on the mortgage. Compl. At that time, Freddie Mac still held all right, title, and interest in the loan. *Id.* ¶ 2. Thus, at the time the complaint was filed, the parties anticipated that Freddie Mac would assign the rights to the loan back to Greystone on November 2020. *Id.* ¶ 13; Walsh Decl., Ex. 1.

---

Declarations (some with accompanying exhibits) of Kevin Walsh, Dkt. 43 ("Walsh Decl."), and Alix Pierre, Dkt. 44 ("Pierre Decl.").

On a motion to dismiss pursuant to Rule 12(b)(1), a court must take as true all material factual allegations in the Complaint, *see Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), but may also examine materials outside the pleadings to determine whether it has jurisdiction, *see Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

In the complaint, Freddie Mac represented that this Court has jurisdiction pursuant to 12 U.S.C. § 1452(f). Compl. ¶ 6.

On November 12, 2020, Greystone repurchased the loan. *See* Pierre Decl. ¶¶ 7–9; *id.*, Exs. 2 (repurchase statement), 4 (assignment from Freddie Mac to Greystone). On November 24, 2020, Freddie Mac moved to substitute Greystone as plaintiff. Dkts. 22–24. On December 12, 2020, defendants moved to dismiss the complaint for lack of subject matter jurisdiction. Dkt. 29.[2]

## II. Legal Standards Governing 12(b)(1) Motion to Dismiss

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal citations and quotations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Although the court must "accept as true all material factual allegations in the complaint," an affirmative showing of jurisdiction is not made "by drawing from the pleadings inferences favorable to the party asserting it." *Drakos*, 140 F.3d at 131.

Unlike under Rule 12(b)(6), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison*, 547 F.3d at 170 (citation omitted). Further, the Court may properly refer to matters outside the pleadings when considering the existence of jurisdiction pursuant to Rule 12(b)(1). *Id.*

---

[2] Greystone later sold the loan to PFSS 2020 Holding Co., LLC ("PFSS"). Pierre Decl. ¶¶ 14–20. On January 14, 2020, Freddie Mac moved to substitute PFSS as plaintiff. Dkts. 36–39. The Court will resolve the motions to substitute by separate order.

**III.    Analysis**

Defendants contend that this Court does not have subject matter jurisdiction over this case and move to dismiss the complaint pursuant to Rule 12(b)(1). They argue that the transfers between Greystone and Freddie Mac were collusive and done with the express purpose of manufacturing jurisdiction, whether that be diversity jurisdiction under 28 U.S.C. § 1332 or original jurisdiction under 12 U.S.C. § 1452.

The Court easily disposes of the argument that Greystone and Freddie Mac colluded to manufacture diversity jurisdiction. Diversity jurisdiction is not at issue in this case. Freddie Mac has not pled and does not contend that this Court has subject matter jurisdiction by virtue of diversity of the parties. *See generally* Opp'n. Rather, it contends that this Court has subject matter jurisdiction because Freddie Mac was an original party to the suit.

Under 12 U.S.C. § 1452(f), federal courts have original jurisdiction over civil actions in which Freddie Mac is a party.[3] "Suits involving Freddie Mac may be brought in federal court." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 564 (2017). Freddie Mac commenced this action, and thus the Court had jurisdiction over the case.

---

[3] Defendants argue that § 1452 is inoperable following Freddie Mac's 1989 reorganization. Reply at 3–6 (citing *U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259 (9th Cir. 2016)). Because defendants made that argument for the first time on reply, the Court has considered Freddie Mac's letter in response to this argument. *See* Dkt. 46 (Freddie Mac sur-reply). Defendants dispute whether this sur-reply is properly considered, *see* Dkt. 47, but it clearly is, as defendants—despite the Complaint's express pleading that the Court had jurisdiction based on § 1452—did not address § 1452 until their reply.

On the merits, defendants' attempt to neutralize § 1452 fails. As Freddie Mac correctly notes, *Adams* held that, for purposes of a claim under the False Claims Act, "a claim presented to Fannie Mae or Freddie Mac is not presented to an 'officer, employee or agent' of the United States" because Fannie Mae and Freddie Mac are "private companies" that are "sponsored or chartered by the federal government." *Adams*, 813 F.3d at 1260. But *Adams* did not address the extent to which § 1452 gives federal courts with *jurisdiction* over claims in which Freddie Mac is a party.

The ensuing transfers of the loan did not divest the Court of subject matter jurisdiction. Freddie Mac concedes that it no longer has any interest in the loan and that the sole basis of this Court's jurisdiction is § 1452. *See* Opp'n at 4–6. And although no court in this Circuit has specifically resolved whether a district court retains jurisdiction over a case originally brought by Freddie Mac where Freddie Mac has since transferred its interest to a private party, the Second Circuit's resolution of similar issue involving the Federal Depository Insurance Corporation ("FDIC") is instructive. *See FDIC v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999). The claims in that case arose under state law, and the sole basis for jurisdiction was FDIC's enabling statute, which grants federal courts federal question jurisdiction over civil cases in which the FDIC is a party. *Id.* at 100 (citing 12 U.S.C. § 1819(b)(2)(A)). The Second Circuit upheld the district court's finding that it retained subject matter jurisdiction over the case after the FDIC had transferred its interest in the subject property to a private party. *Id.* at 100–01. The Circuit explained that jurisdiction "ordinarily depends on the facts as they exist when the complaint is filed," *id.* at 100 (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989)), and that as a matter of policy, a contrary rule could "could well have the effect of deterring normal business transactions" during the litigation, including transactions in the public interest, *id.* at 101 (internal citations and quotations omitted). That reasoning equally applies here, where, after bringing suit, Freddie Mac exercised its contractual right to force Greystone to repurchase the loan upon certain defaults.

And there is no evidence to support defendants' claim that the transfers were collusive. Defendants rely on 18 U.S.C. § 1359, under which district courts lack jurisdiction over cases in which a party was collusively joined by assignment or otherwise. *See* Mem. at 4–6. Defendants argue that because Greystone is a frequent financer and servicer of loans for Freddie Mac, it is

"intertwined" with Freddie Mac. *Id.* at 5. Defendants also note Greystone's duty to repurchase the loan in the event of certain defaults as evidence that Greystone is "affiliated" with Freddie Mac. *Id.* at 4. And, they argue, there is a presumption of collusion when entities executing the assignment are "affiliated," a presumption they argue Freddie Mac has not rebutted. *Id.* (citing *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976)).

Section 1359 is typically invoked where one or more parties have allegedly colluded to manufacture *diversity* jurisdiction. *See, e.g.*, *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) ("[W]e construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."); *Prudential Oil Corp.*, 546 F.2d at 475 ("Section 1359 should therefore be construed broadly to bar any improper attempt to create federal diversity jurisdiction."). Assuming *arguendo* that § 1359 applies to cases involving subject matter jurisdiction, Freddie Mac has demonstrated that the transfers were not collusive.

First, no presumption that the transfers were collusive is warranted. In *Prudential Oil Corp.*, on which defendants rely, the court held that collusion is presumed "where it is shown that a non-diverse parent corporation has assigned a claim to its wholly owned diverse subsidiary engaged in no business other than the prosecution of that claim." *Prudential Oil Corp.*, 546 F.2d at 476. Other courts have extended the presumption where there is a "sufficient identity of corporate interests." *Airlines Reporting Corp.*, 58 F.3d at 863. That is far from the case here. Freddie and Mac and Greystone do not have a corporate relationship. Instead, like other entities at arms-length from Freddie Mac, Greystone participated in a multifamily mortgage program offered by Freddie Mac.

Second, none of the factors courts in this Circuit examine when determining whether an assignment was collusive for purposes of § 1359 indicates that the transfers here were collusive.

These are "the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment." *Airlines Reporting Corp.*, 58 F.3d at 863 (citations omitted).

  Here, the purpose of Freddie Mac's multifamily programs is to provide a "secondary market" to private lenders to "establish and enhance markets for home and multifamily Mortgages." Walsh Decl. ¶¶ 3, 10.  This is accomplished when loan originators immediately sell a new loan to Freddie Mac but remain on to service the loan.  *See* Opp'n at 7–8.  Consistent with this business model, Greystone originated the loan and then promptly sold it to Freddie Mac.  And the initial transfer from Greystone to Freddie Mac on January 14, 2019 came approximately *21 months* before Freddie Mac filed the complaint to foreclose on the mortgage.

  As for the second assignment, back to Greystone after the initiation of this lawsuit, it was demonstrably dictated not by litigation strategy, but by Greystone's contractual duty to repurchase the loan.  As a part of the multifamily program, loan originators must agree to repurchase the loan in the event of certain defaults.  *See* Walsh Decl. ¶ 6.  And there is no evidence to suggest that Freddie Mac imposes this obligation on private loan originators to manufacture federal jurisdiction.  It instead serves to obligate loan originators to repurchase bad loans from Freddie Mac.  Finally, there is no indication that, post-assignment, Freddie Mac will continue to control the litigation.  On the contrary, Freddie Mac has filed successive motions to substitute, for itself as plaintiff, its successor stakeholders, beginning with Greystone.  Freddie Mac has therefore demonstrated that the assignments to and from Greystone were done in the normal course of business of the multifamily mortgage program.

Accordingly, Freddie Mac has demonstrated, by a preponderance of the evidence, that the Court had subject matter jurisdiction at the time of the Complaint, and that such jurisdiction is undisturbed by Freddie Mac's transfer of its interest to Greystone or Greystone's subsequent transfer of that interest to PFSS.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at docket 29.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 1, 2021
New York, New York